UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

SCOTT REED BLAISDELL,

        Petitioner,           Case No. 2:16-cv-103

v.                                 Honorable Paul L. Maloney

MITCH PERRY,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

       This is a habeas corpus action brought by a former state prisoner under 28 U.S.C. § 2254.  At the time Petitioner Scott Reed Blaisdell filed his petition, he was incarcerated with the Michigan Department of Corrections.  Petitioner was discharged by the MDOC on April 11, 2018.[1]

       Petitioner served five years in prison following a jury trial in the Cass County Circuit Court. The jury convicted Petitioner of operating or maintaining a laboratory involving a firearm or other harmful device, Mich. Comp. Laws § 333.7401c(2)(e), operating or maintaining a laboratory involving hazardous waste, Mich. Comp. Laws § 333.7401.c(2)(c), operating or maintaining a laboratory involving methamphetamine, Mich. Comp. Laws § 333.7401c(2)(f), possession of methamphetamine, Mich. Comp. Laws § 333.7403(2)(b)(i), possession of a bomb, Mich. Comp. Laws § 750.224(1)(c), manufacture of marijuana, Mich. Comp. Laws § 333.7401(2)(d)(iii), maintaining a drug house, Mich. Comp. Laws § 333.7405(d), and possession of marijuana, Mich. Comp. Laws § 333.7403(2)(d).  The jury convicted Petitioner of a felony firearm violation, Mich. Comp. Laws

---

[1] *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=503481(last visited Dec. 31, 2018). This Court takes judicial notice of the information provided by a search of the MDOC Offender Tracking Information System (OTIS) website with regard to Petitioner. *See, e.g., Carpenter v. Mich. Dep't of Corr. Time Computation Unit*, No. 1:13-cv-313, 2013 WL 1947249, at *1 n.1 (W.D. Mich. May 9, 2013); *Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 821–22 n.3 (E.D. Mich. 2004).

§ 750.227b, in connection with each one of those offenses except maintaining a drug house and possession of marijuana. The jury acquitted Petitioner of possession of a bomb with unlawful intent, Mich. Comp. Laws § 750.210(2)(a), and the corresponding felony firearm charge. On May 24, 2013, the court sentenced Petitioner to concurrent prison terms of 2 to 25 years for maintaining a laboratory involving a firearm and 2 to 20 years for maintaining a laboratory involving hazardous waste and methamphetamine. Petitioner was ordered to serve those sentences consecutively to six concurrent sentences of 2 years for the felony firearm convictions. The court sentenced Petitioner to time served on the remaining convictions.

On April 28, 2016, Petitioner filed his habeas corpus petition, raising three grounds for relief, as follows:

> I. Trial counsel became constitutionally ineffective when he failed to investigate and then failed to present a proper defense.
>
> II. The trial court erred by refusing to suppress the evidence seized from [Petitioner's] home on the grounds that his 4th Amendment rights were violated, and as a result the issuing magistrate was misled by information in the affidavit that the affiant knew was false.
>
> III. State prosecutor denied [Petitioner] his Sixth and Fourteenth Amendment rights to a fair trial and due process of law when he did not turn over exculpatory and impeachment evidence.

(Pet., ECF No. 1, PageID.2.) Respondent has filed an answer to the petition (ECF No. 14) stating that the grounds should be denied because they are non-cognizable, procedurally defaulted, or meritless. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are non-cognizable or meritless. Accordingly, I recommend that the petition be denied.

Petitioner states the facts underlying his convictions as follows:

> On February 17, 2012, the Cass County Sheriff's office executed a search warrant for Mr. Blaisdell's home. . . . When the detectives entered the master bedroom of the house, they found a two-liter bottle that was used to make methamphetamine through the "one-

2

> pot" method.  The one pot method begins by adding methamphetamine ingredients into a two-liter bottle.  This causes a chemical reaction that results in a sludge.
>
> The sludge consists of binders and starches from pills, lithium, ammonium sulfate, lye, and Coleman fuel.  "Suspended inside that Coleman fuel is . . . methamphetamine."  Coffee filters are used to extract the methamphetamine from the Coleman fuel.  The filtered Coleman fuel is then put into a one-gallon Ziplock bag.  The end product of the one-pot method is considered hazardous waste.  The officers admitted they had no knowledge of how long the "one-pot" set-up had been in the house.
>
> The detectives also found coffee filters and a coffee grinder "with white, ground up residue pow[d]er in it, which is commonly used to grind up ephedrine or pseudoephedrine pills . . . "  Near the coffee grinder, the detectives found a tin that consisted of straws, tin foils, plastic bags, and coffee filters.  The straws are used to smoke or snort methamphetamine.  In addition, the detectives found long guns, rifles, and shotguns in the bedroom.  Some of the guns were located in an open safe and some outside of the safe.  One of the officers acknowledged these appeared to be guns used for hunting.

(Pet., ECF No. 1, PageID.6) (trial transcript citations omitted).[2]

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. \_\_, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

---

[2] There are additional facts relating to the explosives and marijuana charges; however, Petitioner was no longer serving any sentences on those charges or the corresponding felony firearm charges at the time he filed his petition.

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003);

*Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Petitioner contends that the police illegally searched his home and that the evidence should have been suppressed. Petitioner bases this contention on an insufficient affidavit from Deputy Kim Purlee seeking the search warrant. Petitioner claims that the affidavit was faulty because Deputy Purlee relied upon the National Precursor Log Exchange (NPLEx).[3] Petitioner argues that because the NPLEx records were not properly authenticated they could not be admitted as evidence against him. Without the records, there is no affidavit; without the affidavit, there is no search; without the search, there is no evidence against him.

The Michigan Court of Appeals rejected Petitioner's claim, concluding that there was probable cause to support the issuance of the warrant and that the trial court was right to deny Petitioner's motion to suppress. With regard to the content of the affidavit, the court of appeals stated:

> In this case, Deputy Kim Purlee, a member of the Cass County Drug Enforcement Team (CCDET), swore in an affidavit that she personally reviewed pseudoephedrine purchase lists from two Walmart stores and then reviewed a national database for such purchase lists from other stores. This investigation revealed that defendant and his wife "each had one of the highest amount of 'Total Activity Grams' for pseudoephedrine purchases." The affidavit outlined the purchases made by defendant and his wife between October 2011 and February 2012, at five separate stores. Specifically, defendant and his wife had purchased pseudoephedrine pills seven times in October 2011, four times in November 2011, six times in December 2011, five times in January 2012, and three times in February 2012, with the last purchase occurring on February 15, 2012. Defendant was blocked from purchasing pseudoephedrine twice in January 2012 and once in February 2012, based on the amount he and his wife had already purchased.
>
> Based on her experience, Detective Purlee asserted that the amount of pseudoephedrine purchased by defendant and his wife in such a short time span was suspicious, because pseudoephedrine is the main ingredient in methamphetamine. She further represented, based on her training and experience, that individuals who manufacture methamphetamine often keep the manufacturing components in and

---

[3] The NPLEx is "an electronic logging system used by pharmacies and law enforcement to track sales of over-the-counter cold and allergy medications containing precursors to methamphetamine . . . ." *Blaisdell v. Village of Cassopolis*, No. 1:15-cv-575, 2016 WL 354708, at *1 (W.D. Mich. Jan. 29, 2016).

>  around their homes for substantial periods of time, and accordingly expressed her belief that evidence of criminal activity would be found at defendant's home.
>
>  We discern no error in the trial court's conclusion that probable cause existed to support the search warrant. The store log books and national database contained a lengthy history of substantial amounts of pseudoephedrine purchases by both defendant and his wife, including attempts to purchase which were blocked because defendant had exceeded the maximum amount allowed by law. Detective Purlee described her experience in investigating methamphetamine manufacturing cases and the suspicions raised by defendant's purchases. The trial court was permitted to rely on Detective Purlee's conclusion based on her experience in the field. See *People v Darwich*, 226 Mich App 635, 639; 575 NW2d 44 (1997). And the evidence gathered from the logs was adequate for a "reasonably cautious person" to find "a substantial basis for inferring a fair probability that evidence of a crime exists in the stated place."

(Mich. Ct. App. Op., ECF No. 15-15, PageID.725-726) (footnote omitted).

Petitioner's illegal search claim is barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976); *see also Queen v. Scroggy*, 99 F.3d 1302, 1332 (6th Cir. 1996) (noting that it is well-settled that *Stone v. Powell* bars Fourth Amendment claims). In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the claim. *Id.*; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).

For the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism. *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985). If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error. *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72 (6th Cir. 1986); *Markham v. Smith*, 10 F. App'x 323, 326 (6th Cir. 2001).

Petitioner cannot satisfy either prong of the *Stone v. Powell* standard. First, it is beyond dispute that Michigan has a state procedural mechanism that provides a defendant a full opportunity to

6

raise a Fourth Amendment claim before trial. Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures. *See People v. Margelis*, 186 N.W. 488 (Mich. 1922). After *Mapp v. Ohio*, 367 U.S. 643 (1961), Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment. *See, e.g., People v. David*, 326 N.W.2d 485, 488 (Mich. Ct. App. 1982). Consequently, Michigan affords criminal defendants a means to raise Fourth Amendment challenges.

To satisfy the remaining prong of *Stone v. Powell*, Petitioner must allege facts showing that the state corrective mechanism has somehow broken down. *See, e.g., Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (habeas review not barred when state appellate court completely ignored Fourth Amendment claim). The Sixth Circuit pointedly has held that the doctrine of *Stone v. Powell* applies, even if the federal court deems the state-court determination of the Fourth Amendment claim to have been in "egregious error." *Gilbert*, 763 F.2d at 824 (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

Petitioner has not alleged any facts indicating that the state's mechanism has broken down. Indeed, it is clear that the Michigan courts gave Petitioner's claim full and proper consideration. Petitioner's trial counsel moved to suppress the evidence in the trial court. (Cass Cty. Cir. Ct. Docket Sheet, ECF No. 15-1, PageID.172; Mot. Hr'g Tr., ECF 15-8.) His motion was denied. (Mot. Hr'g Tr., ECF No. 15-8, PageID.265.) The court of appeals addressed Petitioner's Fourth Amendment claim and concluded it had no merit. (Mich. Ct. App. Op., ECF No. 15-15, PageID.725-726.) The Michigan Supreme Court then determined that Petitioner's Fourth Amendment issues were not worthy of further review. (Mich. Order, ECF No. 15-16, PageID.908.)

Even if this Court were to disagree with the determinations of the Michigan courts, that disagreement would be insufficient to demonstrate a break-down in the state court's corrective

mechanisms. *Gilbert*, 763 F.2d at 824. Accordingly, because Petitioner has failed to demonstrate either prong of *Stone v. Powell*, his claim of illegal search and seizure is barred on habeas review.

Although *Stone v. Powell* precludes direct consideration of Petitioner's Fourth Amendment claim on habeas review, the merits of Petitioner's Fourth Amendment challenges become relevant, despite *Stone v. Powell,* because of Petitioner's ineffective assistance of counsel claim. In *Kimmelman v. Morrison*, 477 U.S. 365 (1986), the Supreme Court stated: "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that he verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Id.* at 375.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Although Petitioner claimed several instances of ineffective assistance in the state appellate courts, in this Court he claims only one: counsel's performance fell short in challenging the admissibility of the NPLEx records. (Pet., ECF No. 1, PageID.10-13.) The NPLEx records came up three times during Petitioner prosecution. First, the records formed the basis for Deputy Purlee's affidavit in support of the search warrant. Second, the records were, apparently, the subject of testimony by Deputy Purlee at Petitioner's preliminary examination hearing.[4] Third, the records were the subject of a motion *in limine* by Petitioner's counsel. The trial court denied that motion and ruled the records might "properly be admitted as a business record per MRE 803(6) if the prosecutor [could] lay a proper foundation and [could show] they are non-testimonial and not violative of the confrontation clause." (Mot. Hr'g Tr., ECF No. 15-8, PageID.253.)

Counsel could not be faulted for failing to challenge the search warrant affidavit on the ground urged by Petitioner, because "a finding of 'probable cause' may rest upon evidence which is not legally competent in a criminal trial." *United States v. Ventresca*, 380 U.S. 102, 107 (1965). "Hearsay may be the basis for issuance of the warrant . . . ." *Id*. at 108. Thus, counsel's failure to

---

[4] The Respondent did not include the transcript of the preliminary examination hearing in the Rule 5 materials. The transcript is not necessary to resolve the issue raised by Petitioner.

9

challenge the search warrant because it is based on hearsay did not fall below an objective standard of reasonableness. Counsel's failure to raise a meritless issue does not constitute ineffective assistance. *See Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011) ("Given the prejudice requirement, 'counsel cannot be ineffective for a failure to raise an issue that lacks merit.' "). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Therefore, Petitioner's ineffective assistance claim relating to his illegal search claim has no merit.

Petitioner's claim regarding the admission of the NPLEx records at his preliminary examination fares no better. Compliance with the state rules of evidence at a preliminary examination is purely a matter of state law and, apart from Petitioner's ineffective assistance of counsel claim, would not be cognizable on habeas review.[5] Even though the issue is cognizable as raised, it does not have merit. The state-law evidence rules would permit the admission of the NPLEx records as business records. *See* Mich. Rule Evid. 803(6); Mich. Comp. Laws § 766.11b(1)(c). The trial court specifically determined that the NPLEx records could be properly admitted as a business record. (Mot. Hr'g Tr., ECF No. 15-8, PageID.253.)

It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). Because the NPLEx records are admissible under Michigan law, it was not professionally unreasonable for counsel to forego an objection to them at the preliminary examination. It is not ineffective assistance to fail to press a futile objection. *See*

---

[5] "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

*McQueen v. Scroggy*, 99 F.3d 1302, 1328 (6th Cir. 1996), *overruled on other grounds by Abdur'Rahman v. Bell*, 392 F.3d 174 (6th Cir. 2004).

Finally, Petitioner cannot prevail on his claim that counsel was ineffective for failing to prevent the introduction of the NPLEx records at trial, because counsel did not fail. Counsel argued that the records were inadmissible in his motion *in limine*. Although the trial court ruled the NPLEx records might be admissible as business records, the prosecutor never attempted to admit them. (Trial Tr. I, ECF No. 15-10, PageID.278-279; Trial Tr. II, ECF No. 15-11, PageID.475.) Thus, counsel did not act in a professionally unreasonable manner and even if he did so act, Petitioner never suffered prejudice as a result. The NPLEx records had no effect on the jury's verdicts because the jury was never made aware of them.

Petitioner next claims that the prosecutor failed to provide the defense with exculpatory or impeachment evidence. Specifically, Petitioner states the prosecutor should have turned over the signature logs relating to the pseudoephedrine purchases and Deputy Purlee's personnel file.

Under *Brady v. Maryland,* 373 U.S. 83 (1963)*,* "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The Supreme Court has held that "[t]here are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 281 (quoting *Bagley*, 473 U.S. at 682); *see also Cone v. Bell*, 556 U.S. 449, 469-70 (2009). A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

11

The Michigan Court of Appeals identified and then applied the *Brady* standard in rejecting Petitioner's claims:

> Defendant comments at length regarding Detective Purlee's misdeeds in her official position, leading to her termination from the CCDET. He even accuses the detective of perjuring herself in relation to her investigation into the pseudoephedrine purchase logs. Defendant does not factually support his charge of perjury in this case. And, given that the evidence uncovered at defendant's home verified Detective Purlee's allegations in the search warrant affidavit and on the stand regarding material points, we fail to see how Detective Purlee's disciplinary record could have assisted defendant in this case.
>
> Defendant also suggests that many of the signatures in the store logs that were produced during discovery do not match his handwriting. He maintains that he required the remainder of the logs to establish that many purchases were made by an unknown individual falsely using defendant's name. Even if the prosecution failed to produce a complete copy of the records in its control, we discern no reversible error. While defendant claims that some signatures were forgeries, he does not deny that at least some of the signatures were his. Moreover, defendant's convictions were supported by the evidence found in his home, not by his history of pseudoephedrine purchases. There is no "reasonable probability" that, had the evidence been disclosed, the result of the trial would have been different. *Chenault*, 495 Mich at 150.

(Mich. Ct. App. Op., ECF No. 15-15, PageID.728.) Essentially, the court of appeals determined that Petitioner could not prevail on his *Brady* claim because he could not establish prejudice.

Petitioner's assertion that the prosecutor failed to turn over Deputy Purlee's personnel file is demonstrably false. The trial judge ordered the prosecutor to produce Deputy Purlee's personnel file for *in camera* review. (Mot. Hr'g Tr., ECF No. 15-8, PageID.254-255, 265.) The judge conducted the review, determined what was discoverable, and provided that information to Petitioner's counsel. (*Id*.) Petitioner cannot succeed in showing, on this record, that **the prosecutor** was at fault for failing to turn over personnel records. The prosecutor turned everything over to the trial judge and the trial judge determined the content of the personnel file that was properly discoverable.

Moreover, Petitioner has failed to demonstrate how the state appellate court's determination regarding prejudice is erroneous. Petitioner's counsel was able to review several instances of misconduct or impropriety with Deputy Purlee during cross-examination. (Trial Tr. II, ECF No. 15-11, PageID.509-517.) The impact was somewhat muted because the prosecutor had

already addressed the highlights on direct examination. (*Id.*, PageID.491-494.) There is no question, however, that the jury heard of Deputy Purlee's disciplinary problems with the Cass County Sheriff's Department, including the fact that she had lied to her superiors. The likely reason that the jury was not swayed to acquit Petitioner by this evidence is that the case did not rise or fall on the credibility of Deputy Purlee. Several other officers testified regarding the materials found in Petitioner's home.

Similarly, the court of appeals' determination that Petitioner suffered no prejudice from the prosecutor's failure, if any, to turn over signature logs from the stores that sold pseudoephedrine is unassailable. "[Petitioner's] convictions were supported by the evidence found in his home, not by his history of pseudoephedrine purchases." (Mich. Ct. App. Op., ECF No. 15-15, PageID.728.) The jury never heard evidence suggesting that Petitioner had purchased pseudoephedrine. It simply was not part of Petitioner's trial in any respect. Under those circumstances, it is difficult to conceive of how the signature logs could have been exculpatory in any way. Indeed, it is because such signature logs were irrelevant to Petitioner's trial and convictions that they cannot be exculpatory and any failure to provide them in discovery could not be prejudicial.

Petitioner has failed to demonstrate that the state court's resolution of his *Brady* claim is contrary to, or an unreasonable application of, *Brady*. Accordingly, Petitioner is not entitled to habeas relief.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.


Dated:   January 17, 2019                            */s/ Timothy P. Greeley*
                                                     Timothy P. Greeley
                                                     United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).